UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

BRANKO KRPIC,

        Plaintiff,

v.                                   Case No.  8:19-cv-1246-T-24 AEP

PROGRESSIVE EXPRESS
INSURANCE COMPANY,

        Defendant.
_____/

## ORDER

This cause comes before the Court on two motions: (1) Plaintiff's Motion to Amend

(Doc. No. 11), which Defendant opposes (Doc. No. 12); and (2) Plaintiff's Motion to Remand

(Doc. No. 10), which Defendant opposes (Doc. No. 12).  The parties filed reply briefs.  (Doc. No.

18, 19).  The Court held an evidentiary hearing on these motions on August 30, 2019.  As

explained below, both motions are granted.

## I.  Background

Plaintiff Branko Krpic filed this case in state court on April 11, 2019 for under-insured

motorist ("UM") benefits.  Specifically, on September 29, 2018, Plaintiff was a passenger in an

UBER vehicle being driven by Jorge Guillermo Angulo. Plaintiff was injured when a vehicle

driven by Matthew Connor James collided with the vehicle that Plaintiff was riding in.  Plaintiff

filed suit against Defendant Progressive Express Insurance Company, the insurer of Angulo's

vehicle, for UM benefits.

Defendant removed the case to this Court on May 21, 2019 based on diversity of

citizenship.  Plaintiff alleged in his complaint that he is a resident of Washington, and Defendant

alleged in its Notice of Removal that it is a citizen of Ohio. On June 20, 2019, Plaintiff filed the instant motion to amend his complaint in order to assert a negligence claim against Angulo, who is a citizen of Florida. Plaintiff also filed the instant motion to remand the case to state court if the amendment is allowed, arguing that diversity of citizenship would no longer exist because he contends that he is a citizen of Florida. Defendant opposes both motions, arguing that leave to amend should not be granted, as Plaintiff knew of any potential claim that he had against Angulo prior to filing suit and that Plaintiff is seeking leave to amend solely to destroy diversity.

After prompting by the Court, Plaintiff clarified that he moved to Florida in July of 2018—prior to filing the case in state court. Defendant points out that simply moving to Florida does not make Plaintiff a citizen of Florida; instead, the Court must determine whether his move was temporary or whether he intended to remain in Florida at the time that the case was removed.

If Plaintiff was a citizen of Washington at the time of removal, then the addition of a Florida defendant thereafter does not destroy the Court's subject matter jurisdiction over the case, as complete diversity continues to exist. If, however, Plaintiff was a citizen of Florida at the time of removal, then the addition of a Florida defendant would destroy the Court's diversity jurisdiction over this case.

Whether Plaintiff is attempting to add Angulo as a defendant solely to defeat diversity jurisdiction and whether the addition of Angulo will destroy diversity jurisdiction are issues that are factually disputed. As a result, the Court held an evidentiary hearing to address these issues.

## II. Evidentiary Hearing

Plaintiff and one of his attorneys, Danko Borkovic, testified at the hearing. Based on their testimony, the Court finds that Plaintiff has been a citizen of Florida since he moved to

Florida in July of 2018.

### A. Findings of Fact

Plaintiff owns an interstate trucking company, and prior to the accident at issue, he was a truck driver. Plaintiff's trucking company is registered in Illinois, and it drove trucks throughout 48 states. As a truck driver, Plaintiff had a CDL license. His CDL license was issued from the state of Washington in 2015, because, according to Plaintiff, that state had the most flexible CDL licensing.

The address on Plaintiff's Washington license was for a house that he sometimes stayed at when his trucking work brought him to Washington. Two of Plaintiff's friends live at the Washington address; Plaintiff does not own or rent the property at the Washington address. Since moving to Florida, he has not spent one night at the Washington address.

Prior to the accident, Plaintiff lived with his wife in New York; they lived with his wife's mother-figure in her house since 2017. Plaintiff testified that both he and his wife intended to move to Florida to live here permanently.

Plaintiff moved to Florida first, and on July 25, 2018, he entered into a ten-month lease for an apartment; the lease ended on May 26, 2019. (Pla. Ex. 2). He selected a ten-month lease term, because that lease term was the cheapest. At all times, he intended his move to Florida to be permanent.

At the time of the accident on September 29, 2018, Plaintiff had a Washington driver's license. Therefore, when he treated with doctors for his injuries from the car accident, he listed his Washington address on his paperwork so it would match the address on his license. However, there is evidence that when the paperwork contained a section for an alternate address,

3

Plaintiff also gave his Florida address.  (Def. Ex. 2).

After the accident, Plaintiff's injuries prevented him from working as a truck driver, so his finances suffered.  He did not want to bring his wife to Florida until he could get his finances in order.  However, at one point, he did bring his wife to Florida to pick out furniture for their apartment.

In January of 2019, Plaintiff got a DUI and had to give up his driver's license.[1]  He obtained a temporary Florida driving permit, which was valid from January 17, 2019 through February 28, 2019.  (Pla. Ex. 1).  Plaintiff's car has now been repossessed, so he does not have a car, truck, or a Florida driver's license.

On February 28, 2019, Plaintiff's attorney, Danko Borkovic, sent a demand letter to Defendant.  (Doc. No. 1-2).  Borkovic mistakenly stated therein that "Mr. Krpic is not a Florida resident and he does not have Florida PIP."  (Doc. No. 1-2, p. 9).  This mistake was caused by Plaintiff giving the law firm his Washington license and Borkovic using the address contained on the license.[2]  The mistake continued in the state court complaint, which stated that Plaintiff was a resident of Washington.  (Doc. No. 1-6, ¶ 3).

On April 11, 2019, Plaintiff filed suit in state court, and on May 21, 2019, Defendant removed the case to this Court.  On May 27, 2019, when his initial lease ended, Plaintiff renewed his lease for another nine months.  (Pla. Ex. 4).  Again, he selected the short lease term based on

---

[1]Defendant points out that a court document directed to Plaintiff's Florida address was returned to sender as "not deliverable."  (Doc. No. 19-1).  However, that document was addressed to 601 Rosary Rd, Seminole, FL 33777, rather than 601 Rosery Road NE, Apt 4355, Largo, FL 33770.

[2]Borkovic testified that the purpose of that statement was to inform Defendant that Plaintiff did not have Florida PIP.

the rental price, but he intends to stay in Florida permanently.

### B. Conclusions of Law

"Citizenship is equivalent to domicile for purposes of diversity jurisdiction." McCormick

v. Aderholt, 293 F.3d 1254, 1257 (11th Cir. 2002). As explained by one court:

> In determining domicile, a court should consider both positive evidence and presumptions. First, . . . it is a well-established rule that a party's current residence is prima facie evidence of her domicile. But, there is another presumption, once an individual has established a domicile, he remains a citizen there until he satisfies the mental and physical requirements of domicile in a new state. Finally, there is a strong presumption of continuing domicile when a party contends that she has changed it, and that presumption puts a heavier burden on the party attempting to show a change of domicile. These presumptions are meant to aid the Court in its subject matter jurisdiction determination. But an individual's entire course of conduct and the totality of evidence determine domicile for diversity jurisdiction purposes.

Estate of Cochran by and through Pevarnek v. Marshall, 2017 WL 5899200, at *3 (M.D. Fla.

Nov. 30, 2017)(quotation marks and citations omitted). Furthermore:

> A person's domicile is the place of his true, fixed, and permanent home and principal establishment, and to which he has the intention of returning whenever he is absent therefrom.... Furthermore, a change of domicile requires [a] concurrent showing of (1) physical presence at the new location with (2) an intention to remain there indefinitely....

McCormick, 293 F.3d at 1257–58 (quotation marks and internal citations omitted). As explained

above, Plaintiff has been physically present in Florida since July of 2018 and he has intended

since then to remain in Florida permanently. Therefore, the Court concludes that Plaintiff was a

citizen of Florida at the time he filed suit in state court on April 11, 2019 and at the time of

removal on May 21, 2019.[3]

### III. Motion to Amend

On June 20, 2019, Plaintiff filed the instant motion to add Angulo as a defendant in this case, which would destroy diversity jurisdiction. This is the date that Benjamin Barnes was added to this case as an attorney for Plaintiff. At the hearing, Barnes explained to the Court that as soon as he entered into this case, he realized the need to add Angulo as a defendant in order to ensure that this litigation makes Plaintiff whole. Specifically, Barnes explained that even though the other driver was presumed to be at fault, it was possible that Defendant could attempt to rebut that presumption and shift the blame to Angulo, and in that situation, Plaintiff would need to add Angulo in order to get a judgment against Angulo for any amount of blame that was successfully shifted to him.

In determining whether to allow the addition of a non-diverse defendant, the Court looks to 28 U.S.C. § 1447(e). See Gil v. State Farm Mutual Automobile Ins. Co., 2017 WL 7796182, at *1 (S.D. Fla. Apr. 24, 2017). Section 1447(e) provides: "If after removal the plaintiff seeks to join additional defendants whose joinder would destroy subject matter jurisdiction, the court may deny joinder, or permit joinder and remand the action to the State court." This decision is committed to the Court's discretion. See id. "In making this determination, 'a district court should consider (1) the extent to which the purpose of the amendment is to defeat federal jurisdiction, (2) whether plaintiff has been dilatory in asking for amendment, (3) whether plaintiff will be significantly injured if amendment is not allowed, and (4) any other factors bearing on the

---

[3]After the case was removed, Plaintiff learned that his wife is pregnant. Plaintiff still intends to stay in Florida and move his wife here if he can afford to do so.

equities.'" Id. at *2 (quoting Ibis Villas at Miami Gardens Condo Ass'n, Inc. v. Aspen Specialty Ins. Co., 799 F. Supp. 2d 1333, 1334–35 (S.D. Fla. 2011)). As explained below, the Court finds that the amendment should be allowed.

### A. Purpose

The Court first considers whether the purpose of the amendment is to defeat diversity, and in doing so, the Court can consider the timing of Plaintiff seeking the amendment. See id. When a plaintiff seeks to join a non-diverse defendant after removal but before discovery, the purpose of the amendment must be scrutinized because such timing implies that the amendment has been undertaken to defeat federal jurisdiction. See id. The implication of an improper purpose is strong when the plaintiff knew or should have known the identity of the non-diverse defendant at an earlier time. See id.

While Plaintiff knew about Angulo at the time he filed this case in state court and waited a month after the case was removed to file a motion to amend, the Court finds that Barnes' explanation regarding the need for, and timing of, the amendment to be credible and persuasive. Thus, the Court finds that the amendment is not being pursued for an improper purpose.

### B. Dilatory

Next, the Court considers whether Plaintiff has been dilatory in seeking the amendment. "Where there is no apparent reason for doing so, waiting to join a non-diverse defendant until after removal indicates dilatory conduct." Id. In this case, Plaintiff sought the amendment after removal but immediately upon Barnes, his new counsel, entering the case. Given Borkovic's sloppiness regarding Plaintiff's citizenship in both the demand letter and the complaint, it is reasonable to believe that Borkovic failed to consider the necessity of adding Angulo as a

7

defendant. However, the Court finds that Plaintiff was dilatory in seeking the amendment, given

his knowledge of Angulo's role in the car accident at the time he filed the complaint.

### C. Injury to Plaintiff

Next, the Court considers whether Plaintiff will be significantly injured if the amendment

is not allowed. See id. Such considerations include: (1) whether he will be unable to obtain full

relief on his claims unless the non-diverse defendant is joined; and (2) whether the diverse

defendant would be unable to satisfy any potential judgment. See id. Given Barnes' explanation

that if Defendant attempts to shift part of the blame for the accident to Angulo, Plaintiff might

not be able to obtain full relief for his injuries unless Angulo is joined. The Court finds that

Plaintiff may be significantly injured if the amendment is not allowed.

### D. Equities

Next, the Court considers any other factors bearing on the equities. See id. Some courts

have found that having parallel state and federal proceedings would not only fail to serve the

purposes of judicial economy but would also cause the plaintiff to bear additional costs and

expend additional time. See Anderson v. State Farm Mutual Automobile Ins. Co., 2015 WL

11234144, at *2 (S.D. Fla. Mar. 19, 2015). Additionally, courts consider the diverse defendant's

right to have claims against it heard in federal court. See id. This Court has weighed these

considerations and finds that they balance each other out, so this factor does not weigh in either

party's favor.

Based on the above, the Court finds that the amendment should be allowed. The Court

finds that the amendment is not being sought for an improper purpose and that Plaintiff may be

unable to obtain complete relief in this case if the amendment is not allowed. Therefore, the

Court grants the motion to amend.

## IV.  Motion to Remand

Plaintiff also asks the Court to remand this case, because diversity jurisdiction will be destroyed after the addition of Angulo.  The Court agrees and grants the motion to remand.

## V.  Conclusion

Accordingly, it is ORDERED AND ADJUDGED that:

(1)    Plaintiff's Motion to Amend (Doc. No. 11) is **GRANTED**.

(2)    The Clerk is directed to docket the amended complaint (Doc. No. 11-1) as a
       separate docket entry.

(3)    Plaintiff's Motion to Remand (Doc. No. 10) is **GRANTED**.

(4)    The Clerk is directed to **REMAND** this case to state court and then to **CLOSE**
       this case.

**DONE AND ORDERED** at Tampa, Florida, this 3rd day of September, 2019.

SUSAN C. BUCKLEW
United States District Judge

Copies to:
Counsel of Record